ROBERT A. CHAISSON, Judge.
12Pefendant, Blake G. Adams, appeals his convictions for simple criminal damage to property and unauthorized entry of an inhabited dwelling. For the reasons that follow, we affirm his convictions and sentences.

PROCEDURAL HISTORY

On March 26, 2010, the Jefferson Parish District Attorney filed a bill of information charging defendant with simple criminal damage in an amount greater than five hundred dollars, in violation of LSA-R.S. 14:56 (count one), and unauthorized entry of an inhabited dwelling, in violation of LSA-R.S. 14:62.3 (count two). At his arraignment, defendant pled not guilty.
The matter proceeded to trial before a six-person jury on September 14, 2010. After considering the evidence presented, the jury found defendant guilty as charged *438 on both counts. On September 20, 2010, the trial court sentenced defendant, on count one, to two years imprisonment at hard labor and, on count two, to six years imprisonment at hard labor, to run concurrently.
|sOn September 24, 2010, the State filed a bill of information pursuant to the provisions of LSA-R.S. 15:529.1 alleging defendant to be a fourth felony offender. After a hearing on March 1, 2011, the trial court found defendant to be a fourth felony offender, vacated the original sentence on count two, and re-sentenced defendant to thirty years imprisonment at hard labor, without benefit of probation or suspension, to run consecutive to the sentence imposed on count one.[1] Defendant filed a motion to reconsider sentence, which was denied. Defendant now appeals.

FACTS

The victim, Nateryl Butler, and defendant were involved in a romantic relationship. Ms. Butler explained that she and defendant began dating in 2004, and lived together in all of 2005 and half of 2006. As a result of this relationship, they had a son who was born on October 4, 2005. In the beginning, their relationship was good; however, the two began having problems, and in May of 2006, Ms. Butler terminated the relationship and moved out of the apartment they were sharing.
On July 13, 2008, defendant called Ms. Butler and asked permission to visit with their son. Ms. Butler agreed; however, when defendant arrived, he wanted to leave with their child. Ms. Butler would not allow it, and an argument ensued. Ms. Butler then walked outside and was followed by defendant and their son. When defendant was distracted by an incoming call on his cell phone, Ms. Butler returned to her apartment with her son and locked the door. Shortly thereafter, defendant returned to the apartment and knocked on the door. Ms. Butler refused to let him in, and defendant began kicking the door until it breached. Once inside the apartment, defendant punched Ms. Butler in the face and attempted to take his |4son, who refused to leave with him. Ms. Butler dialed 911, but defendant was gone when the police arrived.
Deputy Benjamin Ingles of the Jefferson Parish Sheriffs Office responded to the domestic disturbance call. Upon arrival, Deputy Ingles observed that the door frame to the apartment was “busted” and that there were “splinters of wood all over the floor.” He also observed that Ms. Butler was hysterical, crying, and had slight swelling on the left side of her face.[2]
Another incident occurred on September 24, 2008. On that day, defendant came over to Ms. Butler’s apartment unannounced and vandalized her car when she would not allow him inside of her home. From her kitchen window, Ms. Butler observed defendant break the passenger side mirror and dent the passenger side doors to her vehicle. She immediately dialed 911. Deputy Richard Wilson responded to the scene and took a statement from Ms. Butler, who was “upset and afraid.”
Detective Randall Fernandez of the Jefferson Parish Sheriffs Office conducted a follow-up investigation of these two incidents and defendant’s violation of a protective order issued on behalf of Ms. Butler on October 31, 2009. After completing his investigation, Detective Fernandez ob *439 tained an arrest warrant for defendant, who was subsequently arrested and charged with the instant offenses.
At trial, defendant claimed that he was not at Ms. Butler’s apartment on July 13, 2008, or September 24, 2008. He denied kicking her door open or damaging her vehicle.
| SUFFICIENCY OF THE EVIDENCE
On appeal, defendant challenges the sufficiency of the evidence used to convict him of simple criminal damage to property and unauthorized entry of an inhabited dwelling. Defendant argues that there is no proof that he committed either of the crimes and questions Ms. Butler’s credibility as the sole witness. Specifically, he claims that Ms. Butler fabricated these charges to make his life miserable for his failure to either pay child support or give up his parental rights.
The constitutional standard for testing the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Both the direct and circumstantial evidence must be sufficient to support the conclusion that defendant is guilty beyond a reasonable doubt. State v. Patterson, 10-415 (La.App. 5 Cir. 1/11/11), 63 So.3d 140, 147, writ denied, 11-338 (La.6/17/11), 63 So.3d 1037.
In the instant case, the jury found defendant guilty of unauthorized entry of an inhabited dwelling. That offense is defined in LSA-R.S. 14:62.3 as “the intentional entry by a person without authorization into any inhabited dwelling or other structure belonging to another and used in whole or in part as a home or place of abode by a person.” An unauthorized entry is an entry without consent, express or implied. State v. Kirsch, 04-214 (La.App. 5 Cir. 7/27/04), 880 So.2d 890, 894.
In the instant case, we find that the State presented sufficient evidence to support defendant’s conviction for unauthorized entry of an inhabited dwelling. Ms. Butler testified that on July 13, 2008, she allowed defendant to visit their son at her apartment. When she would not allow defendant to leave with their son, an | (¡argument ensued and continued outside of the apartment. When defendant was distracted by an incoming call on his cell phone, Ms. Butler returned to her apartment with her son and locked the door. Shortly thereafter, defendant returned to the apartment and knocked on the door. When Ms. Butler refused to let him in, defendant kicked her door open. He then entered her apartment, punched her, and attempted to leave with their son. Ms. Butler dialed 911. Deputy Ingles arrived at the scene and observed that the door frame to the apartment was “busted” and further observed that Ms. Butler was hysterical and had slight swelling on the left side of her face. At trial, Ms. Butler testified that defendant did not have permission to enter her apartment at the time he kicked the door open. Further, the 911 tape and the photographs of the damage to the door and Ms. Butler’s injuries were introduced at trial.
The jury also found defendant guilty of simple criminal damage to property where the damage amounts to five hundred dollars but less than fifty thousand dollars. LSA-R.S. 14:56 defines that offense, in pertinent part, as “the intentional damaging of any property of another, without the consent of the owner.” The crime of simple criminal damage to property requires only general criminal intent. General criminal intent is present *440 whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. LSA-R.S. 14:10(2). An owner’s lack of consent to malicious vandalism of an owner’s property can often be inferred circumstantially from the evidence presented. State v. Taylor, 07-474 (La.App. 5 Cir. 12/27/07), 975 So.2d 10, 14, writ denied, 08-0224 (La.9/19/08), 992 So.2d 949.
17We likewise find that the State presented sufficient evidence to prove defendant intentionally damaged Ms. Butler’s vehicle. At trial, Ms. Butler testified that defendant came to her apartment on September 24, 2008, knocked on her door, and vandalized her vehicle when she refused to let him inside. Through her kitchen window, Ms. Butler observed defendant kick her passenger side mirror off and dent the passenger side doors of her vehicle. At trial, Ms. Butler testified that the cost of repairs for the damage to her vehicle was six hundred twenty-five dollars. She further testified that she did not give defendant permission to kick her vehicle. In addition, the 911 call, the photographs of the damage to her vehicle, and the repair estimate for her car were introduced at trial.
The verdicts in this case hinged on credibility determinations by the jury. In contrast to Ms. Butler’s testimony about the offenses, defendant testified that he was not at Ms. Butler’s apartment and did not damage her vehicle on September 24, 2008. Defendant further denied ever kicking Ms. Butler’s door open and entering her home on July 13, 2008; rather, he testified that he was not at her apartment on either occasion. Defendant suggested that Ms. Butler fabricated these charges to make his life miserable for his failure to either pay child support or give up his parental rights. To support this theory, defense counsel, during Ms. Butler’s testimony, questioned her about an e-mail that she sent to defendant’s sister. The e-mail stated: “I’ve had him on child support for three years, and I never dropped it. I made a deal with him and told him that I would drop the child support if he signed over his rights, since he’s not taking care of Blake, anyway. But he told me no, so I’m going to make his life a living hell until he decides to sign over his rights.”
The jury heard the conflicting testimony presented at trial including defendant’s theory that Ms. Butler made up these charges. In finding defendant Isguilty of unauthorized entry of an inhabited dwelling and simple criminal damage to property, the jury showed it rejected defendant’s testimony and gave credence to the evidence produced by the State. The credibility of the witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Robinson, 02-1869 (La.4/14/04), 874 So.2d 66, 79, cert. denied, 543 U.S. 1023, 125 S.Ct. 658, 160 L.Ed.2d 499 (2004). It is not the function of the appellate court to assess the credibility of witnesses or to re-weigh the evidence. State v. Rivet, 01-353 (La.App. 5 Cir. 9/25/01), 798 So.2d 219, 226.
After viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found defendant guilty beyond a reasonable doubt of simple criminal damage *441 to property and unauthorized entry of an inhabited dwelling. Accordingly, the arguments raised by defendant in this assigned error are without merit.

ADMISSION OF OTHER CRIMES EVIDENCE

In this assigned error, defendant claims that the trial court improperly allowed the introduction of other crimes evidence at trial. In particular, defendant challenges the admissibility of evidence of three crimes which occurred before the dates of the instant offenses and two crimes which occurred after the instant offenses.
On September 1, 2010, the State filed a notice of intent to use evidence of other crimes. In that notice, the State sought to introduce the following incidents:
1. On February 28, 2005, defendant choked the victim and slapped her;
|¡)2. On June 18, 2005, defendant kicked the victim in her stomach when she was six months pregnant;
3. In May of 2006, defendant scratched the victim’s legs;
4. On October 31, 2009, defendant threatened to kill the victim; and
5. On December 7, 2009, defendant threatened to kill the victim and also violated a protective order to stay away from her.
On September 8, 2010, the trial court conducted a hearing to determine the admissibility of the other crimes evidence. After considering the arguments of counsel, the trial court ruled that all of the incidents were admissible, stating as follows: “... all of the incidents as described in the pleadings and argued today to the Court do fall within the ambit of 404(B). They are competent and admissible issues for the trier of fact to consider in light of the knowledge, intent, system, absence of mistake, et cetera. They are all prior incidents of domestic violence involving this particular victim.”
Pursuant to this ruling, the following other crimes evidence was presented at trial:
February 28, 2005
At trial, Ms. Butler testified that on February 28, 2005, she and defendant had an argument about her car and her cell phone. When she refused to give defendant her car keys and phone, defendant grabbed her, shoved her against a wall, and choked her. Once defendant let her go, Ms. Butler told him to get his things and leave. Defendant then grabbed her by her hair and threw her to the floor. Ms. Butler, who was two months pregnant at the time, got up, grabbed her cell phone, went downstairs, and called 911. When the police arrived, defendant was arrested and subsequently pled guilty to domestic abuse battery. The photographs of the victim’s injuries and the 911 tape were introduced at trial.
|inJune 18, 2005
Ms. Butler testified that in June of 2005, defendant dragged her from her living room down the sidewalk in front of her house. While Ms. Butler was lying on the sidewalk, defendant kicked her in the stomach. Ms. Butler was six and a half months pregnant at the time and went into pre-term labor. As a result of this incident, Ms. Butler was taken to the emergency room, where she received medical treatment to stop her pre-term labor. Ms. Butler reported the incident to the police; however, after a trial, defendant was found not guilty of the charge stemming from this offense.
May of 2006
According to Ms. Butler, in May of 2006, she and defendant had an argument because defendant wanted to use her car, but she needed it to go to work. Defendant *442 entered the living room, where Ms. Butler was sitting with their seven-month-old son, and stuck his nails into her skin and scratched down her leg. Ms. Butler called the police, but was later informed that the paperwork was lost.
A couple of days later, Ms. Butler decided to move out of their apartment. As she was moving her belongings, defendant began throwing her clothes out of the apartment. When she tried to go back into the apartment to get the rest of hér things, defendant shoved her against the door and told her that she could not go inside. Ma-rylon Jones, the victim’s cousin, witnessed this incident and testified at trial that defendant pushed Ms. Butler against the door and would not allow her to enter the apartment to get the rest of her belongings.[3]
I,,October 31, 2009
In late October of 2009,[4] Ms. Butler had allowed defendant to stay at her Metairie apartment for a few days to visit with their son before defendant left for Atlanta. On October 31, Ms. Butler and her son were getting ready to go out of town, so she asked defendant to leave. Defendant refused to leave her apartment and then threatened to shoot and kill Ms. Butler if she left with their son. Ms. Butler left with her son and defendant followed. Ms. Butler then dropped defendant off at a store, and when she refused to wait, defendant told her she could not get back into the house because he had taken her key off of her key ring. Ms. Butler called 911.
Deputy Michael Morrison of the Jefferson Parish Sheriffs Office responded to the call. At trial, Deputy Morrison testified that upon arriving at the scene, he spoke with Ms. Butler, who was sitting inside her vehicle, and defendant, who was inside Ms. Butler’s apartment. Defendant admitted to the officer that he had an argument with Ms. Butler. After Deputy Morrison finished his investigation, defendant was arrested. On the same day, a protective order against defendant was issued.
December 7, 2009
At trial, Ms. Butler testified that on December 7, 2009, defendant called her and asked her to drop the pending child support charges. Ms. Butler refused, and defendant told her that he was going to kill her and take his son back to Atlanta with him. As a result of this threat, Ms. Butler called the police, and Officer Raynard McMiller responded to the call. According to Officer McMiller, he spoke with Ms. Butler who advised him that defendant had violated a protective order by [ ,2phoning her. She also showed the officer a copy of the protective order that was in effect at the time.
Defendant now challenges the admissibility of the other crimes evidence. Defendant argues that three of the five offenses (June 18, 2005, May of 2006, and December 7, 2009) were not supported by sufficient proof, and all of the evidence of other crimes was more prejudicial than probative. He notes that the other crimes alleged were more serious than the charged offenses. Defendant concludes that because the evidence was otherwise insufficient to convict him without the unduly *443 prejudicial allegations of the other crimes, the error in the admission of the evidence was not harmless.
Generally, evidence of other crimes or bad acts committed by a criminal defendant is not admissible at trial. LSA-C.E. art. 404(B)(1); State v. Prieur, 277 So.2d 126, 128 (La.1973). However, when evidence of other crimes tends to prove a material issue and has independent relevance, it may be admitted by certain statutory and jurisprudential exceptions to this rule. State v. Anderson, 09-934 (La.App. 5 Cir. 3/23/10), 38 So.3d 953, 960, writ denied, 10-908 (La.11/12/10), 49 So.3d 887. Evidence of other crimes may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. LSA-C.E. art. 404(B)(1).
In order for other crimes evidence to be admitted under this rule, one of the factors enumerated in the article must be at issue, have some independent relevance, or be an element of the crime charged. State v. Schaller, 08-522 (La.App. 5 Cir. 5/26/09), 15 So.3d 1046, 1060, writ denied, 09-1406 (La.2/26/10), 28 So.3d 268. Further, “[a]l-though relevant, evidence may be excluded if its | ^probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.” LSA-C.E. art. 403. Absent an abuse of discretion, a trial court’s ruling on the admissibility of evidence pursuant to LSA-C.E. art. 404(B)(1) will not be disturbed. State v. Anderson, 38 So.3d at 960.
Courts have upheld the admissibility of similar other crimes evidence. In State v. Walker, 394 So.2d 1181 (La.1981), the victim saw defendant, her ex-husband, at a lounge while celebrating her recent engagement to another man. A short time later, the victim was awakened by a shotgun blast hitting her wall. At defendant’s trial for aggravated criminal damage to property, the State attempted to elicit testimony from the victim as to defendant’s motive by asking her whether she had any problems with defendant during her marriage and whether he ever lost his temper in her presence. The trial judge allowed this testimony, and the Louisiana Supreme Court agreed with this ruling. On appeal, the court observed, “Clearly, evidence that defendant and his ex-wife, the person to whom defendant’s alleged criminal conduct was directed, had had a poor marital relationship and that defendant had a bad temper was relevant as tending to show the commission of the offense and the intent.” State v. Walker, 394 So.2d at 1184.
In the Walker case, defendant also challenged the trial court’s denial of his motion for mistrial based on the State’s reference to inadmissible other crimes evidence. In particular, the State asked the victim whether defendant beat her during their marriage. The court also found that the evidence of the beatings was admissible, noting that it was “substantially relevant for the purpose of showing defendant’s motive for committing the crime charged, that is, because of the troubled marriage of the parties and its subsequent dissolution, defendant harbored ill will towards Ms. Normand which, upon defendant seeing his ex-wife 114celebrating her engagement to another man, led to his commission of the crime charged.” The court further stated that the evidence tended to prove a material fact at issue, the nature of the prior relationship between the parties in regard to defendant’s motive for committing the crime. State v. Walker, 394 So.2d at 1184-1185.
*444 In State v. Welch, 615 So.2d 300 (La.1993), the victim and others were watching a fireworks display when defendant, the victim’s ex-boyfriend, walked past them. A few minutes later, defendant returned, punched the victim in the face, then pulled out a knife, and cut her on the arm. During defendant’s trial for second degree battery, the trial court allowed the victim to testify regarding previous threats defendant had made to her and her fiancé.
In agreeing with the trial court and finding the prior threats admissible, the Louisiana Supreme Court explained: “... the state could not place the circumstances of the offense in their proper context without reference to the nature of the relationship existing between the victim and the defendant. Without that evidence, which included prior acts of violence or threatened violence by both parties (defendant claimed that the victim had previously attacked him with a knife), the jury would have lacked the context in which to evaluate the victim’s testimony about what otherwise appeared to be a gratuitous attack by the defendant.” State v. Welch, 615 So.2d at 303. The court further found that the threats were a reflection of defendant’s subjective emotional state and could explain his sudden attack on his victim with a knife. It concluded that the primary purpose of the evidence was not to prove defendant’s bad character but to illustrate the volatile nature of his relationship with the victim and his inability to put her behind him.
|1sIn State v. Cotton, 07-782 (La.App. 5 Cir. 2/19/08), 980 So.2d 34, 44, writ denied, 08-0603 (La.10/3/08), 992 So.2d 1010, defendant was convicted of unauthorized entry of an inhabited dwelling, and on appeal, he argued that the trial court erred by admitting evidence of other crimes because that evidence was much more prejudicial than probative. This Court concluded that the trial court did not abuse its discretion in admitting the other crimes evidence, stating as follows:
... We find that evidence of defendant’s hitting the victim while she was driving, following her into the store af-terwards, then damaging her vehicle (October of 2002); going to her place of employment, pointing a gun at her, and telling her he was going to kill her (May 2003); and going to her apartment, then hitting her while she was outside of her apartment because she would not let him go inside (August 2003) was substantially relevant for the purpose of showing his motive for entering the victim’s apartment without her permission in September of 2003. The evidence shows that defendant harbored ill will towards the victim because of their troubled relationship and its subsequent dissolution, which led defendant to pursue the victim and either threaten or physically abuse her.
Additionally, as the Supreme Court found in Welch, the State could not have placed the circumstances of the offense in their proper context without reference to the nature of the relationship existing between the victim and defendant. And without that evidence the jury would have lacked the context in which to evaluate the victim’s testimony about what otherwise would have appeared to be an isolated incident of defendant being in the victim’s apartment. The primary purpose of the evidence was not to prove defendant’s bad character, but to illustrate the volatile nature of his relationship with the victim.
State v. Cotton, 980 So.2d at 44.
Likewise, in the instant case, we find that the trial court did not err in allowing the admission of other crimes evidence pursuant to LSA-C.E. art. 404(B)(1). This other crimes evidence was *445 substantially relevant for showing defendant’s motive for damaging Ms. Butler’s vehicle and for forcefully entering her apartment. Further, the State could not have placed the circumstances of the I,(¡offenses in their proper context without reference to the nature of the relationship existing between Ms. Butler and defendant. Without that evidence the jury would have lacked the context in which to evaluate Ms. Butler’s testimony about what otherwise would have appeared to be isolated incidents. In addition, we find that the primary purpose of the evidence was not to prove defendant’s bad character, but to illustrate the volatile nature of his relationship with Ms. Butler.
Considering that the record demonstrates that the other crimes are highly probative of the volatile relationship between Ms. Butler and defendant, a review of the record supports the conclusion that the probative value of the other crimes evidence outweighed its prejudicial effect. Further, it is noted that the trial judge gave the jury a limiting instruction regarding the other crimes evidence. The jury was instructed as follows:
Evidence that the Defendant was involved in the commission of an offense other than the offense for which he is on trial is to be considered only for a limited purpose. The sole purpose for which such evidence may be considered is whether it tends to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident. Remember, the accused is on trial only for the offense charged. You may not find him guilty of this offense merely because he may have committed another offense.
As part of his argument in this assigned error, defendant asserts that the State failed to prove that he committed three of these offenses by a preponderance of the evidence. Defendant specifically points out that he was found not guilty of the June 18, 2005, incident. With regard to the incidents that occurred in May of 2006, and on December 7, 2009, defendant claims that there were no witnesses to these incidents, no medical records showing that Ms. Butler was either hurt or injured, and no proof of harassing phone calls. Defendant further claims that the ^victim's account of these offenses was not believable. We find no merit to these arguments.
The State presented sufficient proof, for purposes of the introduction of other crimes evidence, to prove that defendant committed these other offenses. Specifically, the victim testified as to the circumstances of each offense. In addition, the State presented the testimony of deputies who responded to some of the calls, as well as numerous 911 tapes. With regard to the June 18, 2005, incident, the jury was informed through the testimony that defendant was acquitted of this offense.
Moreover, even if the other crimes evidence was improperly admitted because the State failed to prove defendant committed the offenses, the erroneous admission of other crimes evidence is subject to a harmless error analysis. An error is harmless when the verdict is surely unattributable to the error. State v. Williams, 09-48 (La.App. 5 Cir. 10/27/09), 28 So.3d 357, 365, writ denied, 09-2565 (La.5/7/10), 34 So.3d 860. In this case, the jury’s verdict was surely unattributable to the alleged error. The State, as discussed in the previous assignment, presented sufficient evidence of guilt at trial without consideration of this other crimes evidence.
Based on the foregoing analysis, we find that the trial court did not abuse its discretion in admitting the other crimes evidence. Moreover, even if improperly admitted, the error can be deemed harmless. *446 Accordingly, the arguments raised by defendant in this assigned error are without merit.

ERROR PATENT REVIEW

We have also reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. 18Weiland, 556 So.2d 175 (La.App. 5 Cir. 1990). Our review reveals that the trial court failed to advise defendant of his multiple offender rights.
LSA-R.S. 15:529.1(D)(l)(a) provides that the trial judge shall inform defendant of the allegation contained in the multiple offender bill of information and of his right to be tried as to the truth thereof according to law and shall require the offender to say whether the allegations are true. LSA-R.S. 15:529.1 also implicitly requires that the trial court advise defendant of his right to remain silent. Generally, a trial court’s failure to advise defendant of his right to a hearing and his right to remain silent is considered harmless error, when defendant’s multiple offender status is established by competent evidence offered by the State at a hearing, rather than by admission of the defendant. State v. Bourgeois, 08-211 (La.App. 5 Cir. 10/28/08), 998 So.2d 165, 167.
In the instant case, defendant pled not guilty to the multiple offender bill of information on November 10, 2010. At the multiple offender hearing on March 1, 2011, defense counsel stipulated defendant was the same person referenced in the multiple offender bill of information. The record does not reflect that the trial court advised defendant of his right to a formal hearing, to have the State prove its case under the multiple offender statute, or of his right to remain silent. However, any omission by the district court in advising defendant of his rights can be deemed harmless in light of the documentary proof introduced by the State at the hearing.
In the instant case, the State presented certified copies of defendant’s predicate convictions, which reflect the correct name and date of birth. These records reflect that defendant pled guilty in all three cases after being advised of and waiving his Boykin rights. In addition, defendant admitted to all of the predicate offenses alleged in the multiple offender bill of information at trial, and |19those admissions corresponded with the State’s proof at the multiple offender hearing. The trial court could properly take those admissions into account in finding that the State presented sufficient proof at the multiple offender hearing that defendant was the same person who had pled guilty to the predicate offenses. State v. Brown, 11-1656 (La.2/10/12), 82 So.3d 1232.
In Brown, supra, the Louisiana Supreme Court held that any omission by the district court in advising defendant of his multiple offender rights did not invalidate defendant’s stipulation through counsel as to his prior felony convictions, and did not require reversal of his multiple offender adjudication, in light of documentary proof introduced by the State at the hearing establishing that defendant was the person who pled guilty to the predicate offenses, and in light of defendant’s own admissions in his testimony at trial.
Here, as in Brown, the State presented documentary proof that defendant was the person who pled guilty to the predicate offenses, and defendant admitted to those prior convictions when he testified at trial. Accordingly, any error in the trial court’s failure to advise defendant of his multiple offender rights can be deemed harmless.
For the reasons set forth herein, we affirm defendant’s convictions and sen- *447 fences as well as his multiple offender adjudication and enhanced sentence.

CONVICTIONS AND SENTENCES AFFIRMED

. Additionally, the trial court issued a permanent Uniform Abuse Prevention Order restraining defendant from any future contact with Nateryl Butler.

. On cross-examination, Deputy Ingles admitted that his report reflected that the victim had no visible injuries and refused medical attention.

. It is noted that the State did not include this second May offense within its notice of intent to introduce other crimes evidence. Although testimony regarding this offense was introduced at trial, defendant is not challenging the introduction of this particular offense on appeal.

. During Ms. Butler’s testimony, she refers to the date of this incident as October 31, 2008; however, it appears that the correct date is October 31, 2009.