**NOT DESIGNATED FOR PUBLICATION**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2020 KA 0523

STATE OF LOUISIANA

VERSUS

DONALD E. TATE

**Judgment Rendered:** **APR 1 6 2021**

* * * * * *

Appealed from the
Twenty-Second Judicial District Court
In and for the Parish of Washington
State of Louisiana
Docket Number 19-141209
Honorable William H. Burris, Judge Presiding

* * * * * *

Warren L. Montgomery
District Attorney
Matthew Caplan
Assistant District Attorney
Covington, Louisiana

Counsel for Appellee
State of Louisiana

Gwendolyn K. Brown
Baton Rouge, Louisiana

Counsel for Defendant/Appellant
Donald E. Tate

* * * * * *

**BEFORE: GUIDRY, McCLENDON, AND LANIER, JJ.**

McClendon, J. Concurs in part and agrees in part and assigns reasons.

**GUIDRY, J.**

The defendant, Donald E. Tate, was charged by bill of information with home invasion, a violation of La. R.S. 14:62.8 (count 1), and false communication with the intent to cause an emergency response, a violation of La. R.S. 14:126.1.1 (count 2). He pled not guilty to the charges and, following a jury trial, was found not guilty on count 1 and guilty as charged on count 2. He filed motions for postverdict judgment of acquittal and new trial, which were denied. The State filed a habitual offender bill of information.[1] The trial court adjudicated the defendant a fourth-felony habitual offender and sentenced him to twenty years imprisonment at hard labor. The defendant made an oral motion to reconsider sentence, which was denied. The defendant now appeals, designating six assignments of error. We affirm the conviction. We vacate the habitual offender adjudication and enhanced sentence and remand this matter to the trial court for further proceedings.

## FACTS

Natasha Magee lived on Bean Street in Franklinton, Washington Parish, with her boyfriend, Asjuanas Magee (Magee), her son, and her daughter. Natasha had previously been in a relationship with the defendant, who at one time, had lived with Natasha. The defendant and Magee are cousins. In January of 2019, the defendant was released from jail. After his release, the defendant went to talk to Magee at Magee's aunt's house about Natasha and the fact that both had been seeing the same woman. It appeared Magee had not been aware the defendant and Natasha had been in a relationship for years. It also appeared the defendant was not aware that Magee, at that time, was living with Natasha. At any rate, while the defendant made it known that he wanted to be with Natasha again, Magee and the defendant agreed to put their differences behind them.

---

[1] The defendant has prior convictions for distribution of cocaine, false imprisonment, and first degree robbery.

2

On March 18, 2019, Magee was in the kitchen at Natasha's house when he heard a noise at the back door. Magee opened the door and saw the defendant standing there. The two men immediately began fighting. The fight moved through the house, into the living room. Natasha and her son came from the back of the house, intervened in the fight, and managed to get the defendant out of the front door of the house. Magee told the defendant he was going to get his shotgun and shoot him. Magee went to the back of the house, but Natasha stopped him from getting the gun.

The defendant left, called 911, and told the operator that Magee had pulled a shotgun on him. The defendant then called 911 several more times. The police responded to the 911 calls and went to Natasha's house. The defendant was not at the house and could not be found. The police did not find a gun in the house because Magee, who was on parole, tossed the shotgun in some bushes behind the house. The defendant was arrested the next day.

The defendant did not testify at trial.

### ASSIGNMENTS OF ERROR NOS. 1, 2, and 3

The defendant addresses these three assignments of error together. The defendant argues, respectively, the evidence is insufficient to support the conviction (first assignment of error) and, as such, the trial court erred in denying the motion for new trial (second assignment of error), and the trial court erred in denying the motion for postverdict judgment of acquittal (third assignment of error).

A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a

3

reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See La. C.Cr.P. art. 821(B); State v. Ordodi, 06-0207, p. 10 (La. 11/29/06), 946 So. 2d 654, 660. The Jackson standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. Patorno, 01-2585, p. 5 (La. App. 1st Cir. 6/21/02), 822 So. 2d 141, 144.

The defendant was convicted of false communication with the intent to cause an emergency response, a law that became effective on May 20, 2018. Under La. R.S. 14:126.1.1(A):

> No person shall, with the intent to cause an emergency response by any law enforcement agency or other first responder in the absence of circumstances requiring such response, knowingly communicate or transmit false or misleading information indicating that conduct has taken place, is taking place, or will take place that may reasonably be believed to constitute a violation of the criminal law of any state or the United States, or that may reasonably be believed to endanger public health or safety.

The defendant argues in brief that the evidence makes clear that the information he provided to the 911 operator was, in fact, true. As such, he did not cause an emergency response by communicating "false or misleading information." The defendant notes that after he and Magee fought each other from the back door to the front door, Magee testified that he then said, "I'm going to get a gun, and I'm going to shoot you. And he [the defendant] left." Magee testified he told the defendant he was going to the back to get the gun. Magee went to the back of the house where Natasha stopped Magee from going back up front with a gun. Magee then testified: "And he [the defendant] said, 'He got a gun. He got a gun.' And he left. And he called the police. And I was on parole. So naturally, I ran, too." The defendant notes that Magee also testified that he "wanted to get to

his [the defendant's] ass." When the police arrived at the house, they did not find a gun inside. Magee testified that he threw the shotgun in the bushes outside.

The defendant called 911 multiple times. In his first call, he told the 911 operator that Asjuanas (Magee) "just pulled a shotgun on me." In a subsequent call, he again stated that Magee had a shotgun and "pulled it" on him. The defendant gave only his first name, and when pressed for more information, hung up. The defendant called from several different numbers, at times asking if the police had gotten to the house yet. On one of the calls, the defendant told the 911 operator to tell the police that Magee was on parole and that they would find a gun in the house. During one call, the defendant said the gun was an assault rifle.

The defendant suggests in brief that his motions for new trial and postverdict judgment of acquittal should have been granted because the gravamen of the conduct prohibited by La. R.S. 14:126.1.1 is the communication of false or misleading information; and since the defendant provided the 911 operator with an accurate portrayal of the facts - that Magee was "armed with a firearm" and that Magee was a convicted felon - his conviction cannot stand because this crime necessarily requires that the information relayed be false.

We do not agree. We find first that a violation of La. R.S. 14:126.1.1 does not necessarily require that the information relayed be false. The pertinent language of La. R.S. 14:126.1.1 is drafted in the disjunctive, so that either false *or* misleading information that causes a law enforcement agency to respond would be a violation of the statute. Magee never confronted the defendant with a shotgun, or any gun, despite the defendant's assertion on appeal. Thus, when the defendant told the 911 operator that Magee had just pulled a shotgun (and then later, an assault rifle) on him, this information was false and, at the very least, misleading.

Magee and Natasha both made clear in their testimony that Magee never confronted the defendant with a gun. While Magee stated that he did get a gun, he

5

further indicated that he ran out the back door, away from the house and the defendant, who was outside in front of the house. Magee testified that when he went to the back to where the shotgun was located, Natasha stopped him from confronting the defendant with the gun. On cross-examination of Magee, the following exchange took place:

Q. You see where I am? I want to find out what happened next, the very next thing. After you said, "I'm going to get my gun," what is the very next thing that happened?
A. I left to go get my gun.
Q. And your gun was where?
A. In the back of the house, in Natasha's bedroom.
Q. And what kind of gun are we talking about, [Magee]?
A. A shotgun.
Q. And did you get your gun, [Magee]?
A. Yeah. I went and I put my hands on it. And [Natasha] came and stopped me and told me don't do that.
Q. Did you load a round in to the chamber?
A. No, sir. I couldn't even cock it. I didn't even know how to cock it. I just got it that day for my protection.
Q. Well, you are a convicted felon, aren't you?
A. So? I'd rather go to jail than be in the grave.
Q. Well, did [the defendant] --
A. I feared for my life.
Q. You feared for your life?
A. Yes.
Q. Did [the defendant] have a gun?
A. I don't know.
Q. Did he say, "I'm going to get my gun?"
A. It didn't matter to me. That didn't matter to me. I said what I was going to do.
Q. Okay. You got your gun where? In the back? And then come to the front?
A. I never brought the gun to the front because [Natasha] wouldn't let me because she didn't want me to go to jail for no gun, for shooting him.
Q. So [Natasha] kept you from using your gun against [the defendant]?
A. Natasha kept me to the back. And [Natasha's son] kept him outside. And he left, and he called police. When I said that I was going to get my gun, he ran and left and said he was going to call the police.
Q. You heard him say that?
A. No. [Natasha] told me that he was about to call the police. So I went out the back door.

On cross-examination, Natasha testified as follows:

Q. You skipped quite a bit there. Let me ask you this. Did you hear

6

anybody say -- wait. Let me get this right. "I got to go get my gun?"
A. Yes, sir.
Q. Who said that?
A. [Magee] said it.
Q. And what did [Magee] do immediately after he said, "I got to go get my gun?"
A. He didn't go get no gun. When the police made it there, I had the police check my house. That's what [the defendant] was saying. He was trying to bring me and [Magee] down at the same time. Just making up stuff. That's why, if he wouldn't have got caught that night, he probably would have came back in my house.

The defendant did not testify at trial, and the jury chose to believe the testimony of Magee and Natasha. The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Additionally, the triers of fact had before them evidence of multiple calls subsequent to the defendant leaving the premises. The jurors could have concluded that at some point during the myriad of calls, circumstances requiring an emergency response no longer existed. That coupled with the misleading information given by the defendant indicating the conduct that had taken place could have weighed heavily in the jurors reaching their verdict. The jury also heard testimony from the responding officer and the 911 dispatcher who received several of the defendant's calls. From the testimony of those witnesses, the jury heard that minutes after the defendant's initial 911 call, the police arrived at Magee's home. Although the police searched the area for the defendant, he was not found. Further, while the police were speaking to Magee and Natasha about the incident, the defendant continued to make 911 calls from an unknown location. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt. State v. Nixon, 17-1582, p. 25 (La. App. 1st Cir. 4/13/18), 250 So. 3d 273, 291, writ denied, 18-0770 (La. 11/14/18), 256 So. 3d 290. We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. State v. Mitchell, 99-3342 (La. 10/17/00), 772 So. 2d 78, 83. The fact that the

7

record contains evidence which conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. Nixon, 17-1582 at 25, 250 So. 3d at 291. In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. State v. Higgins, 03-1980, p. 6 (La. 4/1/05), 898 So. 2d 1219, 1226, cert. denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005).

When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Moten, 510 So. 2d 55, 61 (La. App. 1st Cir.), writ denied, 514 So. 2d 126 (La. 1987). The jury heard all of the testimony and viewed the evidence presented to it at trial and found the defendant guilty. In finding the defendant guilty, the jury clearly rejected the defense's theory of innocence. See Moten, 510 So. 2d at 61. See State v. Weary, 03-3067, pp. 19-20 (La. 4/24/06), 931 So. 2d 297, 311-12, cert. denied, 549 U.S. 1062, 127 S.Ct. 682, 166 L.Ed.2d 531 (2006).

After a thorough review of the record, we find the evidence supports the jury's unanimous guilty verdict. We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of false communication with the intent to cause an emergency response. See State v. Calloway, 07-2306, pp. 1-2 (La. 1/21/09), 1 So. 3d 417, 418 (per curiam).

Based on the foregoing, we find the trial court did not err in denying the defendant's motions for new trial and postverdict judgment of acquittal. Accordingly, these assignments of error are without merit.

# ASSIGNMENT OF ERROR NO. 4

In his fourth assignment of error, the defendant argues the trial court erred by admitting other crimes evidence at trial.

According to the defendant, the trial court erred in failing to hold a pretrial hearing on the admissibility of other crimes evidence, which consisted of prior acts of domestic abuse, pursuant to La. C.E. art. 412.4. The defendant cites to State v. Taylor, 16-1124, p. 11 (La. 12/1/16), 217 So. 3d 283, 291-92, which found that a pretrial Prieur hearing was required to determine the admissibility of other crimes evidence under La. C.E. art. 404(B). The defendant argues Taylor should apply to La. C.E. art. 412.4 because there is little distinction between this Article and La. C.E. art. 404(B).

We do not agree. There is nothing in the language of La. C.E. art. 412.4 that requires a pretrial hearing. Regarding notice, La. C.E. art. 412.4(B) uses identical notice language to that of La. C.E. art. 412.2(B), which allows other crimes evidence in sex offense cases. The notice language is: "In a case in which the state intends to offer evidence under the provisions of this Article, the prosecution shall, upon request of the accused, provide reasonable notice in advance of trial of the nature of any such evidence it intends to introduce at trial for such purposes." There is no pretrial hearing requirement for other crimes evidence under La. C.E. art. 412.2. State v. Williams, 02-1030, p. 5 (La. 10/15/02), 830 So. 2d 984, 987. In Taylor, the Supreme Court limited its discussion to only La. C.E. art. 404(B) other crimes evidence. There is no mention in Taylor of La. C.E. art. 412.2 or La. C.E. art. 412.4, and to expand the narrow scope of Taylor to Article 412.4, as the defendant suggests, would be inappropriate.

The defendant also argues that the other crimes evidence was improperly admitted because it was lacking in probative value and was unduly prejudicial. According to the defendant, there was no connection between the prior instances of

9

alleged domestic abuse and the charged conduct. The defendant asserts there was no evidence that he intended to harm anyone within the house. As such, there was no valid basis to introduce prior instances of domestic abuse battery.

Louisiana Code of Evidence article 404(B)(1) provides:

> Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

Generally, evidence of criminal offenses other than the offense being tried is inadmissible as substantive evidence because of the substantial risk of grave prejudice to the defendant. In order to avoid the unfair inference that a defendant committed a particular crime simply because he is a person of criminal character, other crimes evidence is inadmissible unless it has an independent relevancy besides simply showing a criminal disposition. State v. Lockett, 99-0917, p. 3 (La. App. 1st Cir. 2/18/00), 754 So. 2d 1128, 1130, writ denied, 00-1261 (La. 3/9/01), 786 So. 2d 115.

Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401. All relevant evidence is admissible except as otherwise provided by positive law. Evidence which is not relevant is not admissible. La. C.E. art. 402. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403. Ultimately, questions of relevancy and admissibility of evidence are discretion calls for the

10

trial court. Such determinations regarding relevancy and admissibility should not be overturned absent a clear abuse of discretion. See State v. Mosby, 595 So. 2d 1135, 1139 (La. 1992); State v. Friday, 10-2309, p. 14 (La. App. 1st Cir. 6/17/11), 73 So. 3d 913, 925, writ denied, 11-1456 (La. 4/20/12), 85 So. 3d 1258.

Louisiana Code of Evidence article 412.4(A) provides:

> When an accused is charged with a crime involving abusive behavior against a family member, household member, or dating partner or with acts which constitute cruelty involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving assaultive behavior against a family member, household member, or dating partner or acts which constitute cruelty involving a victim who was under the age of seventeen at the time of the offense, may be admissible and may be considered for its bearing on any matter to which it is relevant, subject to the balancing test provided in Article 403.

Natasha testified at trial that over the years, while she was in a relationship with the defendant, he was physically abusive toward her. She testified the defendant kicked her; burned her with a cigarette; popped her on the ear, which damaged her eardrum; poked her in the eye for which she had to go to the hospital; broke into the house she used to live in and jumped on her; and had several other physical altercations with her while they lived together.

We find the trial court did not abuse its discretion in finding Natasha's testimony admissible under La. C.E. art. 412.4. The incidents of domestic abuse by the defendant fit squarely within the confines of Article 412.4 and were independently relevant to establish the defendant's violent proclivities and the volatile nature of his relationship with Natasha. See State v. Marshall, 13-233, p. 7 (La. App. 5th Cir. 10/30/13), 128 So. 3d 1156, 1161; State v. Adams, 11-980, p. 16 (La. App. 5th Cir. 4/24/12), 89 So. 3d 435, 445, writ denied, 12-1629 (La. 4/19/13), 111 So. 3d 1027. Natasha made clear in her testimony that, while she let the defendant stay with her for a few weeks because he had nowhere else to go after getting out of jail, he was not living with her at the time of the instant offense.

11

Based on Magee's testimony, the defendant was upset that Magee had left with Natasha shortly following their conversation on the afternoon of the incident, and it appears the defendant went to Natasha's house to confront her and Magee.

Defense counsel objected at trial that these instances of domestic abuse battery were not relevant because the testimony established that the defendant did not enter the house to commit battery upon Natasha but was "drawn" into the house and fought only with Magee.[2] We disagree. While we can never know with certainty what the defendant's intentions were when he entered Natasha's house, given his history of violence toward Natasha, it would seem that confronting her was precisely the reason he went to her house, but Magee and Natasha's son were there to stop the defendant. An element of the offense of home invasion is the intent to use force or violence upon the person of another. La. R.S. 14:62.8(A). Under La. C.E. art. 412.4, evidence is allowed of domestic abuse cases that involve abusive behavior not only against a dating partner, but against a family member or household member. Accordingly, the trial court correctly found that the probative value of the evidence was not outweighed by the danger of unfair prejudice under La. C.E. art. 403.

This assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 5

In his fifth assignment of error, the defendant argues that the trial court erred in adjudicating him a habitual offender. Specifically, the defendant contends the habitual offender sentencing was in error because the trial court failed to inform the defendant of his rights after the defendant admitted to the allegations in the habitual offender bill of information.

_____

[2] The objection was overruled.

12

This assignment of error has merit. If, at any time, either after conviction or sentence, it shall appear that a person convicted of a felony has previously been convicted of a felony, the district attorney of the parish in which the subsequent conviction was had may file an information accusing the person of a previous conviction. La. R.S. 15:529.1(D)(1)(a). After a habitual offender bill of information is filed, the court in which the subsequent conviction was had shall cause the person to be brought before it and shall inform him of the allegation contained in the information and of his right to be tried as to the truth thereof according to law, and shall also require the offender to say whether the allegations are true. La. R.S. 15:529.1(D)(1)(a). The statute further implicitly provides that the court should advise the defendant of his right to remain silent. State v. Piper, 18-1796, p. 17 (La. App. 1st Cir. 9/27/19), 287 So. 3d 13, 25-26.

At the initial habitual offender sentencing hearing, defense counsel asked that the defendant be arraigned, and the State responded incorrectly that there was no requirement for the defendant to be arraigned on a habitual offender bill of information. At any rate, defense counsel informed the trial court that he had a copy of the habitual offender bill of information and that the defendant denied the allegations. The sentencing hearing was then continued to a later date.

At the following habitual offender sentencing hearing, defense counsel waived the hearing and asked that the defendant be sentenced. The trial court adjudicated the defendant a fourth-felony habitual offender and sentenced him to twenty years imprisonment at hard labor.

Generally, the failure of the trial court to advise a defendant of his right to a hearing and his right to remain silent is not considered reversible error where the State has offered competent evidence of the defendant's status as a habitual offender at a hearing. State v. Cousin, 17-1135, p. 13 (La. App. 1st Cir. 12/21/17), 240 So. 3d 954, 962, writ denied, 18-0184 (La. 11/5/18), 255 So. 3d 1049. When

13

the defendant's guilt, however, is proven by his own stipulation or admission without having been informed of his right to a hearing or his right to remain silent, by either the trial court or his attorney, there is reversible error. Cousin, 17-1135 at 13-14, 240 So. 3d at 962. The language of the Habitual Offender Law must be strictly construed. In this regard, an implicit and integral aspect of the requirements of La. R.S. 15:529.1 is the court's duty to inform the defendant of his right to remain silent. State v. Gonsoulin, 03-2473, p. 4 (La. App. 1st Cir. 6/25/04), 886 So. 2d 499, 501 (en banc), writ denied, 04-1917 (La. 12/10/04), 888 So. 2d 835.

In this case, while the defendant stipulated to his prior convictions (and presumedly his identity), the State offered no competent evidence of the defendant's status as a habitual offender at the hearing. Accordingly, there was no proof introduced of the defendant's identity as to the alleged predicate offenses. Thus, on the record before us, we find that the admission by the defendant without prior advisement of his rights, as well as the absence of any documentary proof by the State requires reversal of the habitual offender finding. See Cousin, 17-1135 at 13-14, 240 So. 3d at 962. Cf. State v. Cook, 11-2223, p. 2 (La. 3/23/12), 82 So. 3d 1239, 1240 (per curiam), writ denied, 11-2600 (La. 3/23/12), 85 So. 3d 89 (where the Louisiana Supreme Court found that the trial court adjudicated the defendant as a habitual offender on the basis of not only his stipulation, but also the documentary evidence introduced by the State at the hearing).

Accordingly, for the foregoing reasons, the defendant's habitual offender adjudication and enhanced sentence are vacated. The matter is remanded to the trial court for further proceedings.[3]

---

[3] The trial court did not sentence the defendant for the underlying conviction. If on remand the State chooses not to institute habitual offender proceedings, then the trial court is to sentence the defendant for his conviction for false communication with intent to cause an emergency response. The defendant is not protected by principles of double jeopardy from being tried again under the Habitual Offender Law. State v. Young, 99-1310, p. 5 (La. App. 1st Cir. 4/17/00), 769 So. 2d 12, 14.

## ASSIGNMENT OF ERROR NO. 6

In his sixth assignment of error, the defendant argues the trial court abused its discretion in imposing an excessive enhanced sentence.

Because the habitual offender adjudication and enhanced sentence have been vacated, this assignment of error is moot.

**CONVICTION AFFIRMED; HABITUAL OFFENDER ADJUDICATION AND ENHANCED SENTENCE VACATED AND REMANDED TO TRIAL COURT.**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2020 KA 0523


STATE OF LOUISIANA

VERSUS

DONALD E. TATE

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**McClendon, J., concurs in part and agrees in part.**

I find La. C.E. art. 412.4(A) inapplicable to the facts before us. However, I find any error in the admission of the disputed evidence to be harmless.