458 So.2d 539 (1984)
STATE of Louisiana
v.
Terry JOHNSON.
No. KA-2009.
Court of Appeal of Louisiana, Fourth Circuit.
October 3, 1984.
*541 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., New Orleans, Harry F. Connick, Dist. Atty., Joanne C. Marier, Asst. Dist. Atty., New Orleans, for appellee.
Salvatore Panzeca, Racivitch, Carriere, Panzeca & Charbonnet, New Orleans, for appellant.
Before SCHOTT, BRYNES and LOBRANO, JJ.
LOBRANO, Judge.
Defendant, Terry Johnson, was charged by bill of indictment with the March 22, 1983, second degree murder of Jo Ann Gordon, a violation of La.R.S. 14:30.1.[1] Defendant was arraigned on May 13, 1983 and pled not guilty. Trial was held September 26 and 27, 1983. A twelve member jury found the defendant guilty as charged by an eleven-to-one vote. On November 4, 1983, defendant was sentenced to life imprisonment at hard labor in the custody of the Department of Corrections.
FACTS:
The following facts were adduced at trial:
On March 22, 1983, between 2 and 3 o'clock a.m., Jo Ann Gordon was struck in the head by a bullet fired from outside her bedroom window. She died later that morning.
On the night in question, the victim's mother, Creola Gordon was awake and watching television. The victim was in her bedroom curling her hair. Mrs. Gordon heard a knock at her daughter's window. She next heard the defendant calling "Jo Ann, Jo Ann". A few seconds later she *542 heard a shot. She rushed into the room and found her daughter lying on the floor with blood coming from her head. The police were summoned. The victim, who was still alive, was transported to New Orleans Charity Hospital where she died at 10:50 a.m.
The investigating officers concluded that the bullet had been fired from outside and had entered the window at eye level. It passed through the screen, window pane and curtain. The officers asked Mrs. Gordon if she knew of anyone that would be a suspect. She related to them an incident involving the defendant wherein he poured gasoline along the side of the house because Jo Ann denied him visitation of their daughter, Brandy. A follow up investigation was conducted wherein defendant and his girlfriend, Celestine Jordon were questioned relative to defendant's whereabouts at the time of the shooting. Celestine Jordon corroborated defendant's alibi that he spent the night with her at her apartment. She stated she picked up the defendant at the Arabella Street bus barn at 1:30 a.m. when he got off from work. (Both she and defendant worked as bus drivers for New Orleans Public Service.) From there they drove the new bus route she was assigned to drive later that morning to familiarize herself with it, and then proceeded on Interstate 610 to her apartment in Eastern New Orleans. She estimated they arrived at 2:00 a.m. and that defendant spent the night. She did admit, however, that it is possible that defendant could have left and come back without her knowledge because she is a heavy sleeper.
Mrs. Gordon, grief stricken and panic stricken for her own safety, refused to speak to anyone about the shooting. She covered all the windows with sheets and stayed alone for about three weeks before she revealed to her family and the police that she heard the defendant's voice calling to Jo Ann before she was shot. Just two weeks prior to the murder, the defendant threatened to kill Jo Ann and the whole family and had poured gasoline around her house.
Defendant testified in his own behalf and denied shooting the victim. From his conviction and sentence defendant appeals asserting the following assignments of error:
1) The trial court erred in permitting the state to introduce evidence of other crimes.
2) The trial court erred in permitting the state to ask leading questions.
3) The trial court erred in improperly curtailing defense counsel's cross examination of state witnesses.
4) The trial court erred in failing to admit evidence it improperly found as hearsay.
5) The trial court erred in failing to admit evidence which was offered for impeachment purposes only.
6) The trial court erred in admitting inadmissible hearsay evidence.
7) The trial court erred in allowing the prosecutor to improperly question the defendant and in questioning the defendant himself.
8) The trial court erred in permitting the jurors to question witnesses while they were on the witness stand.
9) The defendant was denied a fair trial because the judge did not conduct the trial in a fair and impartial manner.
ASSIGNMENT OF ERROR NO. 1.
Defendant argues that the trial court erred in permitting the State to introduce evidence of other crimes and acts of the defendant to show motive, system and intent.[2] His argument is twofold. First he contends that the notice given by the State prior to trial was inadequate under State v. Prieur, 277 So.2d 126 (La.1973), and second, the evidence was inadmissible under the provisions of La.R.S. 15:445[3] and La. R.S. 15:446.[4]
*543 With respect to the inadequate notice argument we note that defendant failed to object on these grounds at the trial level, and thereby waived this issue on appeal. La.C.Cr.P.Art. 841. Obviously, the purpose for stating the basis for an objection is to apprise the trial court of possible error and thus allow the court to correct same if necessary.
With respect to the second argument, we are well aware of the well established rule which forbids the prosecution from introducing evidence of other criminal acts of the accused unless the evidence is substantially relevant for some purpose other than to show a probability that the defendant committed the crime for which he is on trial because he is a person of criminal character. State v. Sutfield, 354 So.2d 1334 (La.1978). However the law does provide for exceptions to this rule wherein evidence of other criminal acts may be introduced to show intent, knowledge or system, State v. Prieur, supra; La.R.S. 15:445 and La.R.S. 15:446. Louisiana courts have also recognized certain other exceptions, including an exception for the purpose of establishing motive. State v. Walker, 394 So.2d 1181 (La.1981); State v. Sutfield, supra. In holding the evidence of other crimes was substantially relevant for the purpose of showing defendant's motive, the Court in Walker, supra, stated:
"This Court has repeatedly held that before evidence of criminal conduct may be admitted it must be determined that: (1) there is clear and convincing evidence of the commission of the other crimes and the defendant's connection therewith (citations omitted); (2) the other crimes evidence is substantially relevant for some other purpose than to show a probability that the defendant committed the crime on trial because he is a man of criminal character, (citations omitted); (3) the other crimes evidence does tend to prove a material fact genuinely at issue, (citations omitted); and (4) the probative value of the extraneous crimes evidence outweighs its prejudicial effect, (citations omitted). State v. Walker, supra at 1184.
In State v. Humphrey, 412 So.2d 507 (La. 1982), the Court allowed the introduction of evidence of other crimes to prove the issue of identity. In so doing, it said:
"... admissibility should not be determined solely on the basis of pigeon holding or categorizing, but rather on the basis of weighing the degree of relevance of the evidence under the particular circumstances (and the corresponding probative value) against the prejudicial effect."
Id. at 522.
Under the facts of the instant case we are convinced that the evidence of defendant's past criminal conduct was highly relevant to prove motive and identity. All of the requirements of State v. Walker, supra, have been met. Since defendant's identity and relationship with the deceased and her family were material issues, and since the defendant admitted committing the other acts, its probative value far outweighs any prejudicial effects.
This assignment lacks merit.
ASSIGNMENT OF ERROR 2:
Defendant asserts that the trial court erred in permitting the state to ask leading questions. Defense counsel cites numerous incidents of improper questioning during the trial. However, in every instance, except one, the question was already answered before the objection was made or *544 the objection was sustained. The only incident when defense counsel timely objected and was overruled was when the district attorney asked the victim's sister:
"Were you present two weeks prior to the shooting when gasoline was thrown around your mother's house?"
This question is not a leading question as it does not tend to provide the witness with an answer but merely asks if she was present when the gasoline was thrown on the house. State v. Kahey, 436 So.2d 475 (La.1983). The trial judge's ruling was correct. This assignment of error is without merit.
ASSIGNMENT OF ERROR 3.
Defendant contends the trial court improperly curtailed his cross examination of Officer Demma, a prosecution witness. The complained of instances consisted of defense counsel asking Officer Demma to read from his police report what another prosecution witness told him and then to produce the report. Both Officer Demma and the other witness testified and were available for cross examination. The trial court correctly ruled that these requests by defense counsel were attempts to elicit hearsay testimony. State v. Johnson, 381 So.2d 436 (La.1980).
This assignment of error is without merit.
ASSIGNMENT OF ERRORS 4, 5 and 6:
Defendant asserts that the trial court erred in failing to admit evidence it improperly ruled was hearsay; failing to admit the police report as impeachment evidence and allowing other testimony which was clearly hearsay.
The law is clear that the only instances where the defendant is entitled to a copy of the police report are, first, when the officer testifies exclusively from past recollection recorded whether in his possession or not, State v. Latin, 412 So.2d 1357 (La.1982) and second, when the officer acknowledges that he is testifying from his police report when in his possession on the witness stand, State v. Franks, 363 So.2d 518 (La.1978).
In the instant case, Officer Ellis testified from his memory and did not read from the report or extensively rely on it during his testimony.
Defendant asserts that the trial court erred when it excluded the police report as hearsay when defendant requested it as an "impeachment document" against Creola Gordon. Defendant maintains that the report does not contain any notation to the effect that Mrs. Gordon told Officer Ellis of defendant's arson attempt the day of the shooting. However, Mrs. Gordon testified that she did inform Officer Ellis of this fact. Both witnesses testified and were available for cross examination. Defendant was not deprived of his constitutional right of confrontation. State v. McMahon, 391 So.2d 1120 (La.1980); State v. Johnson, 381 So.2d 436 (La.1980); Const. Art. 1, Section 16; State v. Maiden, 258 La. 417, 246 So.2d 810 (1971). The report was properly excluded as hearsay.
Defendant further cites three specific instances in which he asserts the trial court improperly ruled that questions addressed to Officer Ellis sought hearsay testimony. The instances complained of clearly ask Officer Ellis to testify to out-of-court statements to prove the truth of those statements. State v. Knighton, 436 So.2d 1141 (La.1983). The trial court ruling was correct.
Finally, defendant maintains that the trial court erred in admitting hearsay testimony elicited by the prosecutor. Defendant points to numerous instances of hearsay responses but only objected to questions on two occasions. In neither case did the questions require hearsay responses. Velma Gordon testified as to her own knowledge why the victim was asked to leave her job. Detective Demma's answer as to a statement made to him by Celestine Jordon merely confirmed the same testimony given earlier by Miss Jordon. The other instances complained of *545 are waived for failure to object. La.C.Cr. P.Art. 841.
These assignments of error are without merit.
ASSIGNMENT OF ERROR 7:
Defendant contends that the trial court extensively questioned defendant while he was on the stand and allowed the prosecutor to badger him and Miss Jordon during cross examination.
Our Supreme Court takes a dim view of a trial judge questioning witnesses. State v. Sims, 426 So.2d 148 (La.1983); State v. Wagster, 361 So.2d 849 (La.1978). However, the defendant failed to object to the court's intervention at every instance and as such waived this argument on appeal. La.C.Cr.P.Art. 841. However, upon review of the record we do not find that the instances where the trial court questioned a witness created any prejudicial harm to the defendant. In fact, on some occasions the trial court assisted defense counsel in clearing up some ambiguous testimony.
The record also reveals that defense counsel objected only once during the cross-examination of both defendant and Miss Jordon and we do not find that that incident constitutes grounds for reversal considering the latitude allowed a prosecutor on cross-examination. La.R.S. 15:280.
This assignment lacks merit.
ASSIGNMENT OF ERROR 8:
Defendant maintains the trial court erred by permitting jurors to question witnesses while they were testifying.
Pretermitting the merits of this argument, defendant failed to object to this alleged error at trial. Accordingly, this alleged irregularity cannot be availed of on appeal. LSA C.Cr.P.Art. 841. This assignment of error is without merit.
ASSIGNMENT OF ERROR 9:
Defendant asserts he was denied a fair trial because the evidence was insufficient to support his conviction.
The question of sufficiency of evidence depends on whether the Court, after viewing the evidence in the light most favorable to the prosecution, can determine that there was sufficient evidence for the jury to have found the defendant guilty beyond a reasonable doubt on every essential element of the defense. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Fuller, 414 So.2d 306 (La.1982).
Furthermore, when the conviction is based (at least partially) on circumstantial evidence, the rule stated in LSA R.S. 15:438[5] is useful in determining the existence of a reasonable doubt, "because, when the overall evidence, direct and circumstantial, does not exclude a reasonable hypothesis of innocence, there exists a reasonable doubt as to guilt." State v. Nolan Camp, 446 So.2d 1207 (La.1984).
The evidence, although mostly circumstantial, was sufficient to support a finding of guilt. Mrs. Creola Gordon heard defendant calling to the victim seconds before the shooting. Defendant admitted pouring gasoline on the victim's house two weeks prior to the murder in an attempt to terrorize her. Several witnesses testified that defendant threatened to kill the victim and her family and uncontradicted testimony established that defendant on several occasions had battered the victim.
This assignment of error is without merit.
ERRORS PATENT:
We have reviewed the record for errors patent as mandated by La.C.Cr.P.Art. 920(2). We find none.
For the foregoing reasons defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Second degree murder is the killing of a human being:

(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simply robbery, even though he has no intent to kill or to inflict great bodily harm.
Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
[2] The evidence complained of consisted of two charges against defendant for simple battery on the victim and placing combustible materials on the victim's house.
[3] La.R.S. 15:445 provides:

"In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction."
[4] La.R.S. 15:446 provides:

"When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged."
[5] La.R.S. 15:438 provides the following rule for circumstantial evidence in Louisiana:

"The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."