615 So.2d 300 (1993)
STATE of Louisiana
v.
Glenn E. WELCH.
No. 92-K-1866.
Supreme Court of Louisiana.
February 22, 1993.
Concurring Opinion March 2, 1993.
*301 Sherry Watters, New Orleans, for applicant.
Richard P. Ieyoub, Atty. Gen., Harry F. Connick, Dist. Atty., Jack Peebles and David L. Arena, Asst. Dist. Attys., for respondent.
Concurring Opinion of Justice Dennis March 2, 1993.
CALOGERO, Chief Justice.[*]
We granted a Writ of Review to determine whether testimony introduced at trial without notice to the defendant, Glenn E. Welch, regarding prior threats made by him to the victim (his former girlfriend) and her fiancé, was properly allowed. For the reasons which follow, we find that the prior threats made by the defendant, Welch, were admissible. Accordingly, we affirm his conviction of second degree battery.
On October 2, 1990, Jacqueline Monroe, her son, and her friend Patricia Tucker were outside Monroe's apartment watching a fireworks display. The defendant, Welch, walked past them. Welch and Monroe had lived together for eight years but had broken up two years prior to the incident that concerns us. A few minutes after Welch had gone by, he returned to where Monroe was standing and punched her in the face. A scuffle between the two ensued at which time, Monroe claimed, Welch pulled out a knife and cut her on the arm. Welch denied attacking Monroe, claiming that when he approached Monroe to speak to her, he was hit on the back of his head by an unknown assailant.
Monroe was taken to Charity Hospital Emergency Department where the laceration to her arm was treated. While Monroe was undergoing treatment, Welch was brought into the same emergency room with a laceration to his head. When he saw Monroe, he told her that he had meant to kill her. Hospital security was alerted and Welch was arrested and charged with aggravated battery. After a jury trial, he was found guilty of second degree battery.[1] The Court of Appeal affirmed the conviction, 599 So.2d 1106, giving rise to Welch's application which was granted by this Court.
During the trial and over defendant's objection, the trial court allowed the victim to testify regarding previous threats that the defendant had made to her and her fiancé, Clarence Sims.[2] Monroe testified that about eighteen months prior to the incident at hand, Welch had threatened to cut off Sims'"private parts". In addition, Monroe was allowed to testify that she had earlier been threatened by Welch after their relationship had ended.
In his appeal Welch claimed that the trial court improperly admitted character evidence regarding his violent nature and threats he allegedly made to Monroe and her fiancé. Welch contended that this violated La.C.E. art. 404(A)(1) which provides that evidence of a person's character or trait of character is not admissible to prove that the person acted in conformity with the character or trait on a particular occasion.
The court of appeal acknowledged that the state could not use defendant's prior threats to prove the defendant's character *302 "in order to show that he acted in conformity therewith." La.C.E. art. 404(B)(1). Nevertheless, Art. 404(B)(1) incorporates settled exceptions to that general rule, that such evidence may be admissible for other purposes, such as proof of intent, motive, opportunity, etc. La. Code of Evidence Article 404(B)(1) states in pertinent part:
(B)(1) ... [E]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
The Court of Appeal found that Welch's threats to Monroe were used to show proof of intent under La.C.E. art. 404(B)(1); evidence of defendant's prior unspecified threats against the victim were admissible to show his intent by demonstrating that he attacked and injured her in this instance just as he had said he would. The court found such evidence of the threat against Sims improperly admitted, as it did nothing to prove the defendant's intent to harm the victim herself. Nonetheless, the court found the improperly admitted evidence harmless in the context of the entire case.
Testimony at trial gave the jury sharply conflicting accounts of gratuitously inflicted injuries. The victim claimed that the defendant, her former boyfriend, approached her outside the Magnolia Housing Project and without provocation punched her once, then slashed at her with a knife, cutting her to the bone when she threw out her arm to defend herself. On the other hand, the defendant claimed that after he approached the victim to discuss her use of his name to obtain credit to purchase bunk beds for her children, he was struck from behind by an unidentified assailant and sent sprawling to the ground. Defendant required treatment at Charity Hospital for his head wound and while there took the opportunity to threaten the victim once again as she was receiving treatment for her arm.
It was in the context of this dispute over what happened and why, that Ms. Monroe testified that the defendant had made unspecified threats against her and then threatened her fiancé, Clarence Sims, in her presence as they were returning from an engagement party, that he would cut off Sims'"personal parts." Ms. Monroe took the threat so seriously, she testified, that she ended her engagement with Sims.
We find that the Court of Appeal reached the right result, although for the wrong reasons. The charged offense of aggravated battery requires proof only of general intent, i.e., that the defendant intentionally performed the act. The offense of which the jury convicted defendant, second degree battery, requires additional proof that the offender had the specific intent to inflict "serious bodily harm." State v. Fuller, 414 So.2d 306 (La.1982) (Calogero, J.). In Fuller, as in this case, intent did not become an actively disputed issue at trial. Welch did not claim that he accidentally struck the victim, or that he had not intended to inflict serious harm. Rather, he denied the attack altogether. In this regard, while La.C.E. art. 404 contains a longer list of exceptions to the general rule prohibiting other crimes evidence than former R.S. 15:445-446, it was "not intended to change the law" as established by State v. Prieur, 277 So.2d 126 (La.1973), and its progeny. See La.C.E. art. 404 Comments. Therefore, absent an active dispute over the issue of intent, the Fourth Circuit's rationale for admitting the evidence sanctioned the introduction of such evidence for its prohibited use of demonstrating the defendant's prior violent character, to show that he acted "in conformity therewith," which is not allowed.
Nevertheless, in a case similar to the one at hand, this Court in State v. Sutfield, 354 So.2d 1334 (La.1978) stated that motive evidence may fall within the exceptions listed in La.C.E. art. 404(B). Furthermore, in State v. Walker, 394 So.2d 1181, 1183 (La. 1980), this Court observed that "clearly, evidence that defendant and his ex-wife, *303 the person to whom defendant's alleged criminal conduct was directed, had had a poor marital relationship and that defendant had a bad temper was relevant as tending to show the commission of the offense and the intent." See also State v. Albert, 381 So.2d 424 (La.1980); State v. Johnson, 458 So.2d 539 (La.App. 4 Cir. 1984), writ denied, 474 So.2d 945 (La. 1985).
In this case, the state could not place the circumstances of the offense in their proper context without reference to the nature of the relationship existing between the victim and the defendant. Without that evidence, which included prior acts of violence or threatened violence by both parties (defendant claimed that the victim had previously attacked him with a knife), the jury would have lacked the context in which to evaluate the victim's testimony about what otherwise appeared to be a gratuitous attack by the defendant. To that extent, the threat against the victim's fiancé, Sims, was also relevant, not because it said anything about the defendant's intent to harm the victim directly, but because it showed how he clung to the relationship, even after it was long over, and how far he was willing to go to enforce that preoccupation on the victim by isolating her from the companionship of other men. The defendant's own witness, Delany Hollins, testified that he had told the defendant that prior summer, that breaking up was "a part of life and ... he needed to get on with his life and don't worry about it." The incident with Sims demonstrated that the defendant did worry about it, enough to make a direct threat against Sims which simultaneously served as an indirect threat to the victim that she should not date other men. Thus, the threats were a reflection of the defendant's subjective emotional state and could explain his sudden attack on his victim with a knife.
Consequently, evidence of the threats, including the Sims incident, was relevant to the case. The primary purpose of the evidence was not to prove Welch's bad character but to illustrate the volatile nature of his relationship with the victim and his inability to put her behind him and "get on with his life." To that extent, the probative value of the evidence outweighed any prejudicial effect for purposes of La.C.E. art. 403. That article gives the trial court the authority to exclude relevant evidence, only if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, or waste of time." see also State v. Kahey, 436 So.2d 475 (La.1983).
We also find that the defendant waived his objection that the State failed to provide him with a Prieur notice of its intent to use evidence of other crimes or bad acts when he failed to object at trial to the lack of notice by the State. see State v. Kahey, 436 So.2d 475, 489 (La.1983); State v. Smith, 513 So.2d 438 (La.App. 2 Cir.1987).[3]
Because we have found that the introduction of Welch's previous threats to Monroe and those regarding Sims were admissible under La.C.E. art. 404(B)(1) and because we have determined that such evidence was more probative than prejudicial, we need not further comment on the court of appeal's finding of error, nor on its application of "harmless error."

DECREE
For the foregoing reasons, the judgments of the trial court and court of appeal *304 and the defendant's conviction and sentence are affirmed.
AFFIRMED.
DENNIS, J., concurs with reasons.
LEMMON, J., dissents and assigns reasons.
[Concurring Opinion Filed March 2, 1993]
DENNIS, Justice, concurring.
I respectfully concur.
In State v. Sutfield, 354 So.2d 1334 (La. 1978), this court stated:
In order to have independent relevance, the motive established by the other crimes evidence must be more than a general one, such as gaining wealth, which could be the underlying basis for almost any crime; it must be a motive factually peculiar to the victim and the charged crime.
Sutfield, supra, at 1337.
In the instant case, an understanding of the volatile nature of the relationship of the victim and the defendant was instrumental to an assessment of whether the defendant committed the crime. Testimony of the victim, absent the evidence of the past threats the defendant had made since the termination of their relationship, would have indicated an unprovoked attack. In light of the defendant's denial of that attack, the jury would have been faced with equivocal evidence, the only difference being their assignment of credulity to the witnesses. On the other hand, with knowledge of the hostile nature of the victim and defendant's subsequent tensions, the jury was made capable of understanding that the attack was not unprovoked but rather one of long standing passioned tensions between the victim and the defendant. This, under the particular facts of this case, has a high degree of relevance such that the prejudicial effect of the character evidence is outweighed by the probative value of the motive evidence. See La.C.E. art. 403. Therefore, admission of this evidence satisfies the rule enunciated in Sutfield. It is clearly not a case of general motive, possessed by many possible perpetrators, as in Sutfield.
[Dissenting Opinion Filed Feb. 22, 1993]
LEMMON, Justice, Dissenting.
Evidence of defendant's threats to injure the victim shortly after their breakup and (six months later) to cut off the victim's fiance's "private parts" did not really tend to establish a motive for punching and cutting the victim almost two years after the breakup. Motive is an emotion or impulse which acts as an incitement to action. Defendant's emotion of hatred or jealousy toward the victim may have been a motive for the attack, but such emotions are generally proved by evidence other than criminal conduct. When criminal conduct is used to prove hatred or jealousy, the probative value of the evidence must be weighed against its obvious prejudicial effect.
The only contested issue in this case was the truthfulness of the victim's testimony that defendant punched her in the face and cut her with a knife.[1] The disputed evidence tended to prove primarily that defendant was a bad person who was prone to violence. This evidence of defendant's bad character was only marginally relevant to the question of motive, but was extremely prejudicial to the defense. Bad character evidence should not be allowed, under the guise of showing motive, to bolster the credibility of the accusing witness. The outdated evidence only showed defendant had been violent on previous occasions, and was barely relevant to show that defendant hated the victim or was jealous of her suitors.[2] Any probative value of this evidence to relevant issues was far outweighed by its prejudicial effect.
I therefore dissent from the majority's affirming the conviction because the evidence was properly admitted. However, I specifically do not address whether the error was harmless (as found by the court of *305 appeal) since the majority did not address that issue.
NOTES
[*] This case was orally argued before January 1, 1993, with Judge Melvin A. Shortess of the First Circuit Court of Appeal sitting in place of Cole, J. For the procedure employed in cases considered after January 1, 1993, see the footnote in State v. Barras, 615 So.2d 285 (La.1993), decided on this date.
[1] Second degree battery is defined by Louisiana Revised Statute 14:34.1 as:

Second degree battery is a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury.
For purposes of this article, serious bodily injury means injury which involves unconsciousness, extreme physical pain, or protracted and obvious disfigurement or protracted loss or impairment of the function of bodily member, organ, or mental faculty, or a substantial risk of death.
[2] The record demonstrates that the defense objected to the introduction of the previous threats by Welch on the grounds of irrelevancy. The defendant did not then complain of any failure by the State to provide a Prieur warning of the State's intention to introduce Welch's previous threats at trial.
[3] The facts in this case regarding the failure of the defendant to object to the State's lack of Prieur notice, are parallel with those in Smith. The court in Smith stated:

... an irregularity or error cannot be availed of after verdict unless it was objected to at the time of its occurrence. C.Cr.P. 841; State v. Morris, 429 So.2d 111 (La.1983). In this case, Smith lodged one objection, during Calvin Elie's cross-examination, urging only that evidence of other crimes were inadmissable. He did not specifically object to lack of Prieur notice. The subsequent instances when the evidence was offered, Smith's cross-examination and Harper's direct examination, passed completely without objection. Under these circumstances, a defendant is considered to have waived his right to prior notice and hearing. (citations omitted) Id. at 443-444.
[1] Clearly, there was no mistaken identification issue.
[2] Jealously was hardly an issue in the present attack which occurred when defendant saw the victim with her son and another woman.